UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| GMFS, LLC | CIVIL ACTION |
|---|---|
| VERSUS | |
| CENLAR FSB | NO.: 18-00582-BAJ-RLB |

## RULING AND ORDER

Before the Court is GMFS, LLC's **Motion to Dismiss (Doc. 15)** the counterclaims Cenlar FSB asserts against it. For the reasons that follow, the **Motion (Doc. 15)** is **DENIED**.

### I. BACKGROUND

This is a contract dispute. It arises from a mortgage loan subservicing agreement between GMFS and Cenlar. (Doc. 1-1). Cenlar agreed to service GMFS's loans and GMFS agreed to pay Cenlar in exchange. (*Id.* at § 4.1). GMFS also agreed to pay Cenlar an exit fee if GMFS terminated the agreement without cause. (*Id.* at § 5.2).

GMFS terminated the agreement. (Doc. 10 at ¶ 68). Cenlar responded by withholding amounts due to GMFS under an invoice. (Doc. 1 at ¶ 22). GMFS then

sued Cenlar for breaching the agreement, converting GMFS's funds, and negligently and intentionally interfering with GMFS's economic advantage. (*Id.* at ¶¶ 28-55).[1]

In its Complaint, GMFS alleges that Cenlar breached the agreement by taking an exit fee to which it was not entitled. (*Id.* at ¶ 22). Cenlar was not entitled to an exit fee, GMFS alleges, because § 5.3 of the agreement provides that no exit fee is payable upon a with-cause termination, and GMFS terminated the agreement with cause. (*Id.* at ¶ 20). Cenlar disagrees.

Cenlar counterclaimed against GMFS for breaching the agreement. (Doc. 10 at ¶¶ 67-132). Cenlar alleges that GMFS breached § 6.2 of the agreement by failing to notify Cenlar of loan-level breaches of the agreement and by denying Cenlar the opportunity to cure such breaches. (*Id.* at ¶¶ 78-79). And Cenlar asks for declarations that GMFS terminated the agreement without cause and that Cenlar is entitled to an exit fee under § 5.2 of the agreement. (*Id.* at ¶ 100). Cenlar also asserts a first-party indemnity claim against GMFS under § 8.3 of the agreement. (*Id.* at ¶¶ 121-132).

Now, GMFS moves to dismiss three of Cenlar's four counterclaims for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). GMFS asserts that Cenlar's declaratory-judgment counterclaim is redundant, Cenlar's breach-of-contract counterclaim is linked to a notice-of-breach provision that does not qualify as an independent covenant and so cannot support a breach-of-contract claim, and Cenlar's first-party

---

[1] The Court has subject-matter jurisdiction: the parties are completely diverse and the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. § 1332(a)(1).

indemnity claim is not cognizable under New Jersey law. (Doc. 15.). Cenlar opposes. (Doc.26). It rejoins that its declaratory-judgment counterclaim is not redundant, the notice-of-breach provision is an independent covenant, and its first-party indemnity claim finds support in the language of the agreement. (*Id.*).

## II. LEGAL STANDARD

To overcome GMFS's motion, Cenlar must plead plausible claims for relief. *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible if it is pleaded with factual content that allows the Court to reasonably infer that GMFS is liable for the misconduct alleged. *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). The Court accepts as true the well-pleaded facts of Cenlar's counterclaims and views those facts in the light most favorable to Cenlar. *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

## III. CHOICE OF LAW

Because the Court's jurisdiction is based on diversity of citizenship, the Court applies Louisiana substantive law. *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Louisiana's choice-of-law rules are substantive, so the Court applies them here. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-497 (1941)). Louisiana's choice-of-law rules require the Court to honor a contractual choice-of-law provision, except to the extent the law chosen

"contravenes the public policy of the state" whose law would otherwise apply. LA. CIV. CODE art. 3540.

GMFS and Cenlar entered into an agreement with a contractual choice of law provision:

> This Agreement shall be construed in accordance with the laws of the State of New Jersey and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New Jersey applicable to agreements made to be performed therein, except to the extent preempted by federal law.

(Doc. 1-1 at § 9.7). The parties do not argue that application of New Jersey law "contravenes the public policy of the state" whose law would otherwise apply, so the Court honors the agreement and applies New Jersey law to the "obligations, rights[,] and remedies" of the parties under the agreement.[2] The Court applies federal law, however, to the question whether the Court should exercise its discretion to dismiss Cenlar's declaratory-judgment counterclaim as redundant. *See Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 571 U.S. 191, 199 (2014) (operation of federal Declaratory Judgment Act is procedural); *Solio Security, Inc. v. Cummings Eng'g. Consultants, Inc.*, No. A-12-CA-722-SS, 2012 WL 13027556, at *7 (W.D. Tex. Oct. 2, 2012) (applying federal Declaratory Judgment Act in contract dispute despite contract provision calling for application of Arizona law).

---

[2] The parties do not analyze choice of law; they simply point to § 9.7 of the agreement and conclude that New Jersey law applies.

## IV. DISCUSSION

### A. Declaratory Relief

For its first counterclaim, Cenlar seeks a declaration that GMFS terminated the agreement without cause and that Cenlar is entitled to an exit fee under § 5.2 of the agreement. (Doc. 10 at ¶ 100). GMFS asks the Court to dismiss the counterclaim because it mirrors GMFS's breach-of-contract claim. (Doc. 15-1 at p. 4). In GMFS's view, the claims are redundant because they raise the same question: whether Cenlar is entitled to an exit fee under § 5.2 of the agreement. (*Id.*).

The Declaratory Judgment Act empowers the Court to "declare the rights and other legal relations of any interested party" in a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). It "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

Some courts have exercised that discretion to dismiss redundant declaratory-judgment counterclaims. *See, e.g., Burlington Ins. Co. v. Ranger Specialized Glass, Inc.*, No. 4:12-CV-1759, 2012 WL 6569774, at *2 (S.D. Tex. Dec. 17, 2012); *Waller v. DB3 Holdings, Inc.*, No. 3:07-CV-0491, 2008 WL 373155, at *3 (N.D. Tex. Feb. 12, 2008). The reason for dismissal is straightforward: a redundant counterclaim adds nothing to the suit and will become moot once plaintiff's claims are resolved. *See Burlington Ins Co.*, 20012 WL 6569774, at *2.

5

Other courts have declined to dismiss declaratory-judgment counterclaims at the motion-to-dismiss stage. *See, e.g., American General Life Ins. Co. v. Bagley*, No. 2-13-CV-89-RJS, 2013 WL 5916824, at *6 (D. Utah. Nov. 4, 2013); *Principal Life Ins. Co v. Weiss*, No. 09-CV-0840, 2009 WL 10687701, at *2 (E.D. Pa. July 30, 2009). These courts reason that it is difficult to determine if a declaratory-judgment counterclaim is actually redundant until trial, and keeping the counterclaim in the case causes no harm. *See Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 566 (D. Del. 2009).

Turning to Cenlar's declaratory-judgment counterclaim, GMFS has not convinced the Court that it should exercise its "unique" and "substantial" discretion to dismiss the claim at so early a stage. *Wilton*, 515 U.S. at 286; *Brawley v. Alltel Corp.*, No. 08-CV-68-PHX-FJM, 2008 WL 2065976, at *2 (D. Ariz. 2008) (following the "majority rule" and declining to strike counterclaim as redundant). Nor has GMFS convinced the Court that the counterclaim is in fact redundant.

A judgment defeating a claim differs from a judgment awarding relief on an affirmative claim. If Cenlar prevails on summary judgment or following a jury trial, it will obtain a judgment in its favor dismissing the case with prejudice. *See* FED. R. CIV. P. 58. That is all. If Cenlar prevails on its declaratory-judgment counterclaim, however, it will obtain a judgment that establishes its right to an exit fee under the agreement. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 33. The collateral consequences of the judgments may align, but the practical consequences do not: a judgment in favor of Cenlar on GMFS's claims could expose Cenlar to another suit

challenging Cenlar's right to any uncollected portion of the exit fee. And such a judgment would require Cenlar to take further action—*i.e.*, file another lawsuit—to obtain any uncollected portion of the exit fee. That collection suit would fail because any claim to the exit fee would be barred by the compulsory-counterclaim rule. *See* FED. R. CIV. P. 13(a). By contrast, a judgment in favor of Cenlar on Cenlar's declaratory-judgment counterclaim would, standing alone, give Cenlar the right to any uncollected portion of the exit fee.

Because GMFS has not convinced the Court that it should exercise its discretion to dismiss Cenlar's declaratory-judgment counterclaim as redundant, the Court denies GMFS's motion to dismiss that counterclaim at this time.

### B. Breach of Contract

Cenlar alleges that GMFS breached § 6.2 of the agreement by failing to notify Cenlar of loan-level breaches of the agreement and by denying Cenlar the opportunity to cure such breaches. (Doc. 10 at ¶¶ 102-110). GMFS argues that Cenlar fails to plead a plausible claim because § 6.2's notice-of-breach provision is not an independent covenant that can support a breach-of-contract claim. (Doc. 15-1 at p. 7). Section 6.2 provides:

> Owner/Servicer shall promptly notify Subservicer of any failure or anticipated failure on its part to observe and perform any warranty, representation, covenant or agreement required to be observed or performed by it under this Agreement.

(Doc. 1-1 at § 6.2).

7

The Court looks to New Jersey law to decide if § 6.2 is an independent covenant that can support a breach-of-contract claim. (Doc. 1-1 at § 9.7). New Jersey law requires the Court to "examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." *Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 892 A.2d 646, 656 (N.J. 2006). To determine the parties' intent, the Court "must examine the entire agreement." *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997).

Section 6.2 is an independent covenant that can support Cenlar's breach-of-contract counterclaim. The Court finds unpersuasive GMFS's argument that § 5.3, as the more specific provision, governs § 6.2.[3] A specific provision governs a general one only when the provisions have the same function. *In re Cendant Corp. Sec. Litig.*, 454 F.3d 235, 246-247 (3d Cir. 2006). Sections 6.2 and 5.3 have different functions. Section 6.2 obliges GMFS to "promptly notify" Cenlar of Cenlar's failure to "perform *any* warranty, representation, covenant or agreement." (Doc. 1-1 at § 6.2) (emphasis added). The failure to perform that triggers GMFS's notice obligation need not be material. (*Id.*). Section 5.3, by contrast, grants GMFS the right to terminate the agreement for cause in the event Cenlar "material[ly] default[s] in performance of its obligations" under the agreement; it does not cover non-material breaches of the agreement. (*Id.* at § 5.3). The Court declines GMFS's invitation to interpret the

---

[3] GMFS also asserts that § 6.2 is not an independent covenant because the provision does not indicate when notice of breach must be provided. (Doc. 15-1 at p. 9). The Court disagrees. Section 6.2 requires GMFS to "promptly notify" Cenlar of a breach. (Doc. 1-1 at § 6.2).

8

agreement in a way that would eliminate GMFS's obligation to "promptly notify" Cenlar of non-material breaches of the agreement.

Next, GFMS argues that Cenlar fails to plead a plausible breach-of-contract claim because Cenlar does not allege that it fulfilled its obligations under the agreement. (Doc. 15-1 at p. 9). The argument lacks merit. Cenlar specifically alleges that it "has performed its obligations under the Subservicing Agreement." (Doc. 10 at ¶ 103).

Because Cenlar has pleaded a plausible breach-of-contract counterclaim, the Court denies GMFS's motion to dismiss that counterclaim.

### C. First-Party Indemnity

Cenlar counterclaims against GMFS for indemnity under § 8.3 of the agreement. (Doc. 10 at ¶¶ 121-132). Section 8.3 provides:

> Except as otherwise stated herein, Owner/Servicer shall indemnify and hold Subservicer harmless against any loss, liability, forfeiture or expense, including without limitation carrying costs, investigation costs, fines, penalties and attorneys' fees and expenses, including, without limitation, the costs and expense of curing any breaches of Owner/Servicer's representations and warranties relating to the Mortgage Loans (collectively, the "Liabilities"), suffered or incurred by Subservicer arising out of, directly or indirectly resulting from or relating to:
> 
>   a. Owner/Servicer's willful misfeasance, bad faith, fraud, gross negligence, or reckless disregard of its obligations hereunder;
> 
>   b. Any material misrepresentation made by Owner/Servicer in this Agreement;
> 
>   c. Any material breach by Owner/Servicer of a representation, warranty or covenant of Owner/Servicer contained in this Agreement;

> d. Errors and omissions in the processing, origination or servicing of any Mortgage Loan prior to the applicable Transfer Date;
>
> e. Compliance by Subservicer with instructions or requirements of Owner/Servicer in connection with this Agreement; and
>
> f. Any claim, litigation or proceeding to which Subservicer is made a party as a result of its acting as, or status as, Subservicer of a Mortgage Loan, other than any such claim, litigation or proceeding (i) which is based on a misrepresentation, breach or error or omission on the part of Subservicer and (ii) with respect to which Subservicer must indemnify Owner/Servicer pursuant to this Agreement.

(Doc. 1-1 at § 8.3). GMFS argues that Cenlar fails to plead a plausible indemnity claim because New Jersey law does not recognize claims for first-party indemnity. (Doc. 15-1 at p. 10). Cenlar rejoins that its indemnity claim should stand because the parties freely negotiated § 8.3, and New Jersey law does not bar claims for first-party indemnity. (Doc. 26 at p. 10).

The Court views § 8.3 under New Jersey's rules for contract interpretation. *Mantilla v. NC Mall Assocs.*, 770 A.2d 1144, 1151 (N.J. 2001). Those rules forbid the Court from "mak[ing] a better contract for the parties than they themselves have seen fit to enter into." *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 155 (3d Cir. 1992) (citation omitted). New Jersey law grants parties to a freely-negotiated contract the "utmost liberty" in contracting. *Rodriguez v. Raymours Furniture Co.*, 138 A.3d 528, 538 (N.J. 2016). Because GMFS neither disputes that the indemnity obligations in § 8.3 resulted from arms-length negotiations between sophisticated entities nor identifies any ambiguity in the provision's language, the Court enforces § 8.3 as it is written. *See Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960).

A review of § 8.3 confirms that the parties envisioned first-party indemnity obligations. (Doc. 1-1 at § 8.3(c)). Section 8.3(c), for example, obliges GMFS to indemnify Cenlar against any loss "directly or indirectly resulting from or relating to . . . any material breach by [GMFS] of a representation, warranty[,] or covenant of [GMFS] contained in this Agreement." (*Id.*). GMFS has not explained how Cenlar could have liability to a third party "*directly* . . . resulting from" GMFS's material breach of a "representation warranty[,] or covenant" in the agreement. (*Id.*) (emphasis added).[4] Thus, the Court cannot interpret § 8.3 to apply only to third-party indemnity claims without reading § 8.3(c) out of the agreement.

Moving beyond the language of § 8.3(c), GMFS correctly notes that some courts applying New Jersey law have rejected claims for first-party indemnity. *See, e.g., Inv'rs Sav. Bank v. Waldo Jersey City, LLC*, 12 A.3d 264, 271 (N.J. Super. Ct. App. Div. 2011); *Atlantic City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, 453 F. App'x 174, 181 (3d Cir. 2011).[5] These courts based their rejections on the language of the particular indemnity provisions—not on any statutory or jurisprudential bar. *See Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010) (surveying

---

[4] Instead, GMFS offers a generality: § 8.3(c) could apply if a third party sues Cenlar for conduct by GMFS that amounts to a material breach of the agreement. (Doc. 29 at p. 5). Because GMFS does not engage with the text of § 8.3(c) — by explaining how and to whom Cenlar could have third-party liability *directly resulting from* GMFS's material breach of the agreement — the Court finds GMFS's argument unpersuasive.

[5] Neither opinion is particularly instructive. Both courts considered standard indemnity provisions without language reflecting an intent to allow first-party indemnity. *Waldo Jersey City, LLC*, 12 A.3d at 270 & n.6; *Atlantic City Assocs.*, 453 F. App'x at 177. And *Atlantic City Assocs.* is a non-precedential opinion that relies on *Travelers*, 594 F.3d at 255. *See* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, Internal Operating Procedure 5.7.

New Jersey law and finding no authority to permit or to categorically bar first-party indemnity claims). In *Travelers*, for example, the United States Court of Appeals for the Third Circuit held that an indemnity provision did not permit claims for first-party indemnity. *Id.* at 255. The court reasoned that because the provision used the terms "indemnify," "defend," and "hold harmless," the court had to give effect to each term. *Id.* And because an indemnitor cannot "defend" or "hold harmless" an indemnitee from itself, the court continued, the provision applied only to third-party liability. *Id.* at 255.

The indemnity provisions in *Travelers* and § 8.3 are similar in some ways. Both use the terms "indemnify" and "hold harmless." (Doc. 1-1 at § 8.3). And so as to both, an interpretation that allows first-party indemnity claims would remove the requirement of third-party liability created by the use of the "hold harmless" language. *See Travelers*, 594 F.3d at 255. But unlike the indemnity provision in *Travelers*, § 8.3 contains language reflecting an intent to permit first-party indemnity claims. (Doc. 1-1 at § 8.3(c)). And as discussed above, interpreting § 8.3 to apply only to third-party indemnity claims would read § 8.3(c) out of the agreement. Adopting either interpretation, then, would require the Court to ignore some language in the agreement. Because the parties have not briefed the conflict or suggested how the Court should resolve it, the Court declines to decide if Cenlar may bring a first-party indemnity claim against GMFS under § 8.3 and denies GMFS's motion to dismiss Cenlar's claim for first-party indemnity.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that GMFS, LLC's **Motion to Dismiss (Doc. 15)** is **DENIED**.

Baton Rouge, Louisiana, this 9th day of January, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**