# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

GMFS, LLC                                            CIVIL ACTION

VERSUS                                               NO. 18-582-BAJ-RLB

CENLAR FSB

## ORDER

Before the Court is the Motion to Compel Responses to Interrogatories, Requests for Admission, and Requests for Production of Documents (R. Doc. 34) filed by Plaintiff, GMFS, LLC ("GMFS") on March 15, 2019. Defendant, Cenlar FSB ("Cenlar") opposes the motion. (R. Doc. 39). GMFS filed a Reply (R. Doc. 48).

Also before the Court is the Motion to Compel (R. Doc. 40) filed by Cenlar on April 12, 2019. GMFS opposes the motion. (R. Doc. 49). Cenlar filed a Reply. (R. Doc. 58).

Oral argument was held on July 19, 2019. (R. Doc. 61). Pursuant to the Court's July 19, 2019 Order (R. Doc. 61), the parties submitted correspondence to the Court and participated in a subsequent telephone conference on August 19, 2019. (R. Doc. 73). Following that telephone conference, the parties participated in additional court-ordered discovery, participated in an in-chambers conference on September 6, 2019 (R. Doc. 75), GMFS submitted a Status Report (R. Doc. 76) on September 9, 2019 as ordered, and participated in a final telephone conference (R. Doc. 77) on September 19, 2019. At the September 19, 2019 telephone conference, the Court indicated that no further information was needed to resolve the pending discovery motions.

The Court also notes that it previously issued an Order (R. Doc. 57) granting the parties' joint request to modify the scheduling order and extend the discovery deadlines, wherein the

Court stated that an amended scheduling order would be issued upon resolution of the pending discovery related motions.

**I.	Background**

GMFS initiated this litigation with the filing of its Complaint (R. Doc. 1) on May 25, 2018. GMFS alleges that it entered into a Subservicing Agreement with Cenlar on or about December 14, 2012, wherein the parties agreed that Cenlar would service certain mortgage loans for GMFS. (R. Doc. 1 at 2). GMFS alleges that, after the August 2016 flood event in Baton Rouge and the surrounding area, it began receiving complaints about Cenlar's loan servicing, causing numerous problems and exposing GMFS to various penalties. (R. Doc. 1 at 3-5). GMFS then terminated the Subservicing Agreement with Cenlar, and Cenlar withheld an "Exit Fee," to which GMFS alleges it is entitled. (R. Doc. 1 at 7). GMFS also seeks recovery of a deconversion fee and damages. (R. Doc. 1 at 7, 10).

GMFS propounded its First Set of Interrogatories, Requests for Admission, and Requests for Production of Documents to Cenlar on October 9, 2018. (R. Doc. 34-1 at 4). Cenlar provided responses to GMFS on January 16, 2019, which GMFS alleges are "incomplete, evasive or otherwise inadequate." (R. Doc. 34-1 at 4). GMFS filed its Motion to Compel after transmitting correspondence regarding Cenlar's purportedly deficient responses. (R. Doc. 34-1 at 4).

Cenlar served its Request for Production and Interrogatories on October 2, 2018. (R. Doc. 40-1 at 6). Rather than providing written responses to Cenlar's Interrogatories, GMFS produced business records pursuant to Fed. R. Civ. P. 33(d). (R. Doc. 40-1 at 8). Cenlar then filed its Motion to Compel. (R. Doc. 40).

The Court held oral argument on July 19, 2019. (R. Doc. 62). Pursuant to the Order issued following oral argument, the parties were required to engage in additional conferencing,

as well as providing certain documents to the Court for *in camera* review. (R. Doc. 63). The parties provided an update to the Court by way of correspondence dated August 15, 2019, and an additional telephone conference was held with the Court on August 19, 2019, wherein the parties were able to narrow the issues remaining in dispute. (R. Doc. 73). Following that telephone conference, the parties participated in a subsequent conference in chambers on September 6, 2019, wherein the parties facilitated the Court's understanding of certain production and discovery issues. (R. Doc. 75). GMFS provided a supplemental Status Report (R. Doc. 76) on September 9, 2019, outlining its review of the Complaint Logs provided by Cenlar. On September 19, 2019, the parties participated in a final telephone conference wherein the Court advised that it considered the pending motions fully briefed and ripe for resolution.

## II.     Law and Analysis

### A.     Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "If the answer to an interrogatory may be determined by examining . . . a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Fed. R. Civ. P. 33(d).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ.

4

P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories, requests for production, and requests for admission within 30 days after service. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A); Fed. R. Civ. P. 36(a)(3). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests made pursuant to Rule 33 or Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B. Analysis

#### i. GMFS's Motion to Compel

GMFS seeks to compel Cenlar's response to certain interrogatories and requests for production of documents.[1] The Court will address the substantive issue below based on the representations made in the August 15, 2019 correspondence received from the parties. (R. Doc. 73 at 5-17).

**Interrogatory Nos. 6-11**

GMFS continues to request the Court compel Cenlar's response to Interrogatory Nos. 6-11. These interrogatories ask Cenlar to identify persons who communicated with a government regulator concerning the Subservicing Agreement, the Customers, or regarding any Consumer or

---

[1] Based on the August 19, 2019 telephone status conference, as well as the correspondence received from the parties pursuant thereto, the discovery requests that remain at issue are as follows: Interrogatory Nos. 6-11, 23, and 24, and Requests for Production of Documents Nos. 5-13 and 15-23. (R. Doc. 73). To the extent GMFS's Motion to Compel encompasses any other discovery requests, the Court notes that the parties have represented those disputes to have been resolved. (R. Doc. 73 at 5-17).

5

Transfer Regulatory Issues, as those terms are defined in the requests. (R. Doc. 34-2 at 3-4). Cenlar argues that the requests "are impermissibly vague and susceptible to multiple interpretations," and that the requests are not relevant because "Plaintiff's Complaint does not allege that it has been subject to any regulatory investigation or finds as a result of the subservicing relationship." (R. Doc. 39 at 9). Cenlar also argues that the defined terms inappropriately import legal conclusions. (R. Doc. 39 at 10).

In its Complaint, GMFS alleges that the Subservicing Agreement required Cenlar to "perform its services… (iv) in compliance and in accordance with the provisions of this Agreement and Applicable Requirements," that "Cenlar's servicing caused numerous other problems as well, exposing GMFS to Dodd-Frank and other penalties," and that Cenlar materially breached the Subservicing Agreement. (R. Doc. 1 at 3, 4, 10).

GMFS seeks discovery by way of interrogatory based on these allegations. GMFS alleges that the Subservicing Agreement required Cenlar to comply with statutes and regulations, that Cenlar exposed GMFS to penalties, and that Cenlar breached the Subservicing Agreement. Whether Cenlar communicated with any government regulator relating to actual or potential regulatory issues based on Plaintiff's allegations is, therefore, relevant to the litigation and Cenlar will be compelled to answer accordingly.

Notwithstanding the Court's finding that discovery regarding penalties is relevant, Interrogatory Nos. 6-11 are overly broad as written such that the Court will impose the following substantive limitations. Cenlar represented that it offered to respond to discovery of regulator complaints or inquiries "as outlined in plaintiff's complaint." (R. Doc. 73 at 7). The Court agrees that Interrogatory Nos. 6-11 should be limited to the claims brought by Plaintiff. To the extent

that any of Interrogatory Nos. 6-11 seek information, as worded by Plaintiff, outside the scope of the Complaint, those interrogatories are hereby limited by this ruling.

Interrogatory Nos. 6 and 8 are modified to be limited to "any issues relating to the AGREEMENT based on the factual allegations in Plaintiff's Complaint." Interrogatory Nos. 7 and 9 are modified to be limited to "any issues relating to the CUSTOMERS based on the factual allegations in Plaintiff's Complaint." Interrogatory No. 10 is modified to be limited to "relating in any way to any CONSUMER REGULATORY ISSUES based on the factual allegations in Plaintiff's Complaint," and Interrogatory No. 11 is modified to be limited to "relating in any way to TRANSFER REGULATORY ISSUES based on the factual allegations in Plaintiff's Complaint."

Lastly, the Court disagrees with Cenlar's objection to Interrogatory Nos. 10 and 11 on the grounds that they "necessarily import[] legal conclusions." (R. Doc.34-3 at 4). The terms "consumer regulatory issue" and "transfer regulatory issue," as defined by Plaintiff, are not limited to actual violations, but rather include "actual, alleged, possible or potential" violations. (R. Doc. 34-4 at 4-5). To the extent Cenlar is in possession of responsive information related to "actual, alleged, possible or potential" regulatory violations based on the factual allegations in Plaintiff's Complaint, that information is relevant, and responses shall be provided, subject to any purported privilege.

Cenlar shall provide supplemental responses to GMFS in accordance with the foregoing within thirty (30) days of the date of this Order.

**Interrogatory Nos. 23 and 24**

GMFS seeks to compel Cenlar's response to Interrogatory Nos. 23 and 24, which request Cenlar to identify loans wherein GMFS or the customer alerted Cenlar to a potential problem,

including regulatory issues. Cenlar objects to these interrogatories on the grounds that the defined terms import legal conclusions, that the identification of responsive information would be unduly burdensome. (R. Doc. 34-2 at 7-8).

Based on representations to the Court, Cenlar provided "Complaint Logs" to GMFS on a periodic basis, which Complaint Logs contain information on any complaint received by Cenlar from a borrower. Cenlar provided samples of these logs to the Court for review. After conducting an *in camera* review of the Complaint logs provided by Cenlar, the Court concludes that the Complaint Logs are relevant to Plaintiff's claims, and the burden of producing those to GMFS is extremely low given that they have already been compiled and provided to the Court. In the August 19, 2019 Order, the Court indicated that Cenlar was to formally produce these Complaint Logs to GMFS on or before August 26, 2019. (R. Doc. 73 at 2). GMFS represented in its September 18, 2019 correspondence to the Court that it had not received Complaint Logs for August 2016, September 2016, and April 2018. Because the servicing transfer occurred in March 2018, Cenlar has represented that there "would not be a complaint log for April 2018." (R. Doc. 77 at 18). Cenlar also indicated that it would conduct a good faith search for the August and September 2016 logs. In accordance with those representations, those Complaint Logs shall be provided to GMFS within fourteen (14) days of the date of this Order.

Cenlar also provided the Court certain Borrower Logs for *in camera* review. After review, the Court concludes, generally speaking, that the Borrower Logs are responsive and relevant to GMFS's discovery requests.

Cenlar has represented that all of the information contained on the Borrower Logs was provided to GMFS by way of SLS during the transfer of loan servicing from Cenlar to SLS. Cenlar argues that the burden of producing the Borrower Logs is disproportionate to the needs of

the litigation, especially considering its position that it has already provided this information to SLS in the servicing transfer. Cenlar suggests that GMFS should simply obtain the logs from SLS.

As reflected in the record, GMFS has undertaken significant efforts to obtain whatever information may be available from SLS, a non-party to this litigation. GMFS responds that SLS was provided a running text file from Cenlar, and that they are unable to create the Borrower Logs in the same formatting, also noting that some of the information in the Borrower Logs is not present in the information provided by Cenlar to SLS.

GMFS and Cenlar met with the Court on September 6, 2019. (R. Doc. 75). The details of that review, as referenced in the Court's Order that same date, are incorporated herein.

Cenlar is a loan servicing company. Its business is to maintain and service loan files. The Court does not agree that the production or review of those files is unduly burdensome, considering the nature of the allegations in this lawsuit. Cenlar has shown that it has the ability to create a Borrower Logs with information relevant to GMFS's claims. The Court has conducted an *in camera* review of a sub-set of those Borrower Logs, and met with the parties at length in an attempt to determine if there was a means by which the information contained in the Borrower Logs could be obtained by GMFS via some other channel that would alleviate the burden Cenlar alleges. GMFS continues to assert substantive difficulties replicating this information from the information in the possession of SLS, while at the same time, Cenlar has the ability to create and produce the Borrower Logs. Finally, the Court notes that it is simply incredible that upon review of the materials provided through SLS, "it appears that a significant amount of the missing information pertains to 'collections' or other customer interactions." (R. Doc. 75). Regardless of whether these were the result of inadvertence, selective omission, or

some other scenario, this information is at the heart of this case. Furthermore, if Cenlar's representations that it provided all of the information to SLS is correct, then it appears that somewhere in that transfer and storage, complete information is no longer available to be provided to GMFS. It would be important to ensure that this discovery identifies only (and all) of the complaints that Cenlar had received during the servicing of the GMFS loans. The Court find that SLS is not a suitable alternative for such production.

Accordingly, for every loan identified on the Complaint Logs for the period of August 2016 through April 2018, Cenlar shall produce to GMFS each corresponding Borrower Log within thirty (30) days of the date of this Order. To the extent GMFS seeks to compel Cenlar to identify customer loans about which GMFS alerted Cenlar to a problem, the Court sustains Cenlar's objection on the grounds that GMFS would be in possession of that information to the same extent as Cenlar. However, Cenlar represented in September 15, 2019 correspondence to GMFS, which was provided to the Court in connection with the September 19, 2019 telephone conference, that it would conduct the following additional discovery research and response:

> (i) include two additional custodians to Cenlar's previous collection; (ii) broaden Cenlar's search of all materials collected to date to include (i) loan numbers identified in the complaint logs (as well as documents otherwise referencing borrower complaints); and (iii) separately, to search for and produce supplemental documentation maintained by Cenlar's complaint management group related to the borrower complaints listed on the complaint logs.

(R. Doc. 77 at 12, 15-17). The Court finds that these steps are appropriate. To the extent anything in this Order would limit that agreed to by Cenlar in its September 15, 2019 correspondence to GMFS, the correspondence shall govern the scope of supplemental production to be provided by Cenlar within thirty (30) days of the date of this Order. In addition, if any borrower complaints have been identified through the review referenced in that letter, the parties

shall confer regarding the appropriate information that should be provided by Cenlar consistent with this Order.

**Request for Production of Documents No. 6**

Request for Production of Documents No. 6 seeks all documents regarding any customers' problems, complaints, and dissatisfaction with servicing, or the transfer of servicing from February 2018 through the present. (R. Doc. 34-2 at 18). Cenlar objects to this request on the grounds that it is overly broad and unduly burdensome. (R. Doc. 34-2 at 18).

The Court finds that the production of the Complaint Logs for the August 2016 through April 2018 time period, along with production of the corresponding Borrower Logs, satisfies Request for Production of Documents No. 6 at this time, without foreclosing the possibility that GMFS may seek additional, loan-specific information in the future, as discussed more fully above. Cenlar shall provide supplemental responses to GMFS in accordance with the foregoing within thirty (30) days of the date of this Order.

**Request for Production of Documents No. 7**

In Request for Production of Documents No. 7, GMFS asks Cenlar to provide all documents relating to servicing notes and payment history for each customer from December 2012 through the present. (R. Doc. 34-2 at 19). Cenlar objects on the grounds that the request is overly broad and unduly burdensome. The Court agrees and will sustain Cenlar's objection accordingly.

As written, Request for Production of Documents No. 7 is not limited to the allegations set forth in Plaintiff's Complaint, but seeks every document for every customer for the entirety of the subservicing relationship. Furthermore, even were the Court to limit this request to the relevant allegations, the extent of documents sought (i.e., all documents relating to servicing

notes and payment history) is overly broad and it would be inappropriate for the Court to attempt to carve out relevant and properly tailored categories of documents. GMFS's motion as to Request for Production of Documents No. 7 is, therefore, denied.

**Request for Production of Documents Nos. 8-13**

GMFS asks the Court to compel Cenlar's response to Request for Production of Documents Nos. 8-13, which seek various information pertaining to regulatory issues. (R. Doc. 34-2 at 19-22). Cenlar objects on the grounds of burden and overbreadth, as well as that the requests call for Cenlar to arrive at legal conclusions. (R. Doc. 34-2 at 19-22).

To begin, the Court limits these requests to the relevant time period of August 2016 through April 2018, just before Plaintiff initiated this litigation. Similar to Interrogatory Nos. 6-11, discussed above, the Court will also limit the substantive scope of Request for Production of Documents Nos. 8-13 to responsive documents "relating to the factual allegations in Plaintiff's Complaint." As set forth more fully above, Plaintiff has brought allegations that Cenlar exposed it to regulatory penalties and, therefore, discovery regarding regulatory issues relating to the factual allegations in Plaintiff's Complaint is relevant at this stage.

Cenlar shall provide supplemental responses to GMFS in accordance with the foregoing within thirty (30) days of the date of this Order.

**Request for Production of Documents Nos. 5, 15, and 16**

Request for Production of Documents Nos. 5, 15, and 16 seek documents and communications relating to the transfer of servicing "from SLS to YOU," as well as relating to the Subservicing Agreement between the parties. Cenlar objects to Request for Production of Documents No. 5 on the grounds that "it states that servicing was transferred from SLS to Cenlar, which is incorrect." (R. Doc. 34-2 at 18). As to Request for Production of Documents

12

Nos. 15 and 16, Cenlar states that it "will search for and produce non-privileged, non-duplicative documents within its possession, custody and control responsive" to the request. (R. Doc. 34-2 at 22, 23).

As it pertains to Request for Production of Documents No. 5, the Court overrules Cenlar's objection. Plaintiff's Complaint notes the transfer of servicing from Cenlar to SLS, not the other way around. (R. Doc. 1 at 9). No party disputes that the servicing was transferred from Cenlar to SLS. Though Request for Production of Documents No. 5 contains a factual error, it appears to be merely typographical such that Cenlar can respond subject to a caveat that its response is based on the allegation that the transfer of servicing was from Cenlar to SLS.

Cenlar makes no argument in its Opposition to Request for Production of Documents No. 5, based on the objection stated in response or otherwise. As the Court has overruled the objection raised by Cenlar in its response to the discovery request, Cenlar can now respond to the request in full, subject to any properly claimed privilege.

Regarding Request for Production of Documents Nos. 15 and 16, Cenlar represents in Opposition that it "agreed to search for and produce documents in response" such that Plaintiff's Motion should be denied. (R. Doc. 39 at 8). In Reply, Plaintiff notes that Cenlar agreed to produce "non-duplicative" documents within its possession, custody, or control. Cenlar does not explain what it means by "non-duplicative," but the Court presumes Cenlar means that it will limit its production to either responsive documents that have not already been produced by GMFS, or responsive documents that it believes are not also in the possession, custody, or control of GMFS. Either way, the Court finds that Cenlar's restriction of its responsive document production to those documents it deems non-duplicative for whatever reason is not a recognized basis on which to withhold production. As noted by the court in *Pamlab, L.L.C. v Rite Aid Corp.*,

2004 WL 2358106, at *6 (E.D. La. Oct. 13, 2004), "[p]art of the purpose of discovery is to determine what is in the possession of the opposing party so that a party can be aware of all documents that are in the possession of either party that are pertinent to the claims and defenses of the parties." In addition, the Court also questions the ability of a responding party to accurately assess what is in the possession of a requesting party.

Cenlar makes no other objection to Request for Production of Documents Nos. 15 and 16 other than "Subject to the foregoing General Objections." (R. Doc. 34-2 at 22-23). This simple reference to various general objections fails to comply with Rule 34(b)(2)(B), which requires objections to be made with specificity. See also Rule 34 Advisory Notes, 2015 Amendments. As such, those general objections are disregarded.

Accordingly, to the extent Cenlar has withheld or is withholding responsive documents on the basis of being identified "duplicative," that objection is overruled and those documents shall be produced subject to any properly claimed privilege. Cenlar shall provide supplemental responses to GMFS in accordance with the foregoing within thirty (30) days of the date of this Order.

**Request for Production of Documents Nos. 17-21**

Request for Production of Documents Nos. 17-21 seek information relating to the termination letter and relating to amounts Cenlar contends is due from GMFS. In response to the request, Cenlar stated that it "will search for and produce non-privileged, non-duplicative documents within its possession, custody and control responsive to" the request. (R. Doc. 34-2 at 23-25). Cenlar argues in Opposition that GMFS's motion should be denied as to Request for Production of Documents Nos. 17-20 because it agreed to search for and produce documents. Cenlar makes no argument in opposition to Request for Production of Documents No. 21, though

14

the response is the same as the others. (R. Doc. 39 at 8). GMFS raises objection to the validity of Cenlar's agreement to produce "non-duplicative" documents.

For the same reasons addressed above, the Court finds that Cenlar's agreement to produce documents responsive to Request for Production of Documents Nos. 17-21 subject to the requirement they be "non-duplicative" to be inappropriate. Cenlar makes no other objection to responding to Request for Production of Documents Nos. 17-21.[2] Accordingly, to the extent Cenlar has withheld or is withholding responsive documents on the basis of being identified "duplicative," that objection is overruled and those documents shall be produced subject to any properly claimed privilege. Cenlar shall provide supplemental responses to GMFS in accordance with the foregoing within thirty (30) days of the date of this Order.

**Request for Production of Documents Nos. 22 and 23**

Lastly, GMFS seeks to compel Cenlar's response to Request for Production of Documents Nos. 22 and 23, which request documents and communications relating to notification from GMFS to Cenlar informing Cenlar of complaints relating to Cenlar's servicing activities in connection with the customers. (R. Doc. 34-3 at 25). Cenlar objects to both requests on the grounds that the documents and communications sought are within the possession, custody, or control of GMFS. (R. Doc. 34-3 at 25). As to Request for Production of Documents No. 23, and subject to its previous objection, Cenlar indicated that it would "search for and produce non-privileged, non-duplicative documents within its possession, custody and control." (R. Doc. 34-3 at 25).

To begin, to the extent Cenlar is withholding responsive documents based on it deeming them duplicative, that objection is overruled and Cenlar shall supplement its production

---

[2] The same analysis regarding general objections applies to these RFP and another others that fail to state objections with specificity.

accordingly. For the same reasons, where Cenlar objects on the grounds that Cenlar has responsive documents or communications in its possession, custody, or control that it has determined or believes are also in the possession, custody, or control of GMFS, that objection is also overruled. Significantly, the Court cannot condone a discovery response that allows a responding party to condition its response on its unilateral determination of what documents another party may have in its possession, custody, or control. Cenlar may have responsive documents that are also in the possession, custody, or control of GMFS, perhaps even originally generated by GMFS, but that alone does not allow Cenlar to avoid production. Based on the allegations in this case, Cenlar's receipt of such complaints, and how complaints were handled, maintained and resolved, can only be determined through Cenlar's production of such materials. Accordingly, Cenlar's objection to Request for Production of Documents Nos. 22 and 23 is overruled, and as Cenlar has set forth no other objection, Cenlar shall supplement its production accordingly.

Cenlar shall provide supplemental responses to GMFS in accordance with the foregoing within thirty (30) days of the date of this Order.

### ii. Cenlar's Motion to Compel

Cenlar asks that the Court compel GMFS to respond to Interrogatory Nos. 1-3, which ask GMFS to identify certain information regarding (1) complaints or problems referenced in Plaintiff's Complaint; (2) breaches or material breaches referenced in Plaintiff's Complaint; and (3) the loan information and documentation GMFS asserts was not provided to it in connection with the transfer of servicing to SLS. (R. Doc. 40-5 at 6-9). Cenlar acknowledges that GMFS provided it approximately 14,000 documents, but that the production does "not allow Cenlar to

16

understand in any way what claims are being asserted and how the documents produced relate to those claims." (R. Doc. 40-1 at 8).

GMFS responds that it has no obligation to specify which documents provided to Cenlar respond to which discovery requests because Cenlar "can just as easily extract the necessary information from the loan documents and e-mails GMFS provided through its production of documents, and which Cenlar has possessed and used for years." (R. Doc. 49 at 7). GMFS also suggests that Cenlar can locate and identify information within these documents as readily as GMFS because "it was Cenlar that accessed, added to and otherwise worked with these electronic loan files on a daily basis." (R. Doc. 49 at 8). In Reply, Cenlar argues that GMFS's document production does not adequately respond to Cenlar's interrogatories because it does not disclose "the specific facts supporting GMFS's allegations of loan level breaches," that GMFS cannot rely on a document production that does not provide an index designed to guide the search to the documents responsive to the interrogatories, and that Cenlar's interrogatories cannot be addressed solely by historical business records because they do not contain information regarding how the customer complaints damaged GMFS. (R. Doc. 58 at 2-4).

First, the Court finds that producing 14,000 documents without any index of their content or guidance as to which documents or groups of documents are responsive to which discovery requests does not comply with the Federal Rules. Federal Rules of Civil Procedure Rule 33(d) provides that a responding party "may answer [an interrogatory] by (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Counsel for GMFS suggested at oral argument that it performed a broad search that returned around 90,000 documents, then culled that down to

the 14,000 documents that were ultimately produced such that its production does not constitute an impermissible "document dump." (R. Doc. 69 at 14, 23, 30).

The Court disagrees. The Federal Rules require a party to provide some specification of the records such that an interrogating party can locate and identify them as readily as the responding party could. Fed. R. Civ. P. 33(d). Where GMFS notes that 6 to 8 of its employees spent three months going through the initial 90,000 documents to pare it down to 14,000 responsive documents, the Court is not convinced that GMFS and Cenlar have the same ability to identify, at least generally, documents or groups of documents that are responsive to each interrogatory. Accordingly, the Court will order GMFS to identify documents or groups of documents responsive to each of Interrogatories 1-3, including sub-parts. GMFS shall do so within fourteen (14) days of the date of this Order.

Cenlar also argues that production of documents alone, without any written response to its interrogatories, is insufficient to comply with GMFS's discovery obligations because the nature of certain parts of Cenlar's interrogatories requires a written response. (R. Doc. 40-1 at 10). GMFS asserts that it has met its discovery obligations through its proper invocation of its purported right to refer to and rely upon its production of documents. (R. Doc. 49 at 1). Specifically with regard to Interrogatory No. 3, Cenlar notes that GMFS previously represented that it would provide examples of missing documentation to Cenlar, but has not done so. (R. Doc. 40-1 at 10-11; R. Doc. 19 at 1).

Similar to the Court's ruling on GMFS's Request for Production of Documents No. 6 above, the Court finds that GMFS's document production pursuant to Fed. R. Civ. P. 33(d), subject to the requirement that GMFS specify the interrogatories or portions of interrogatories that specific documents or groups of documents are responsive to, is sufficient at this time,

subject to the following qualifications. First, the Court notes explicitly that Cenlar is not precluded from seeking further relief after GMFS has complied with the specificity requirement of Fed. R. Civ. P. 33(d). Any further relief sought shall be made within the forthcoming discovery deadlines, and shall lay out the specific interrogatories or parts of interrogatories to which the document production was not responsive. Second, where GMFS previously represented that it would provide Cenlar examples of missing documentation, GMFS shall provide those examples to Cenlar within fourteen (14) days of the date of this Order. The Court notes that it may be difficult for a party to identify what it does not have, but GMFS has alleged that Cenlar failed to provide certain information in the transfer to SLS, and therefore, must provide Cenlar some basis by which Cenlar can assess and potentially address GMFS's claim.

**III. Conclusion**

Based on the foregoing,

**IT IS ORDERED** that the Motion to Compel Further Responses to Interrogatories, Requests for Admission, and Requests for Production of Documents (R. Doc. 34) filed by GMFS, LLC on March 15, 2019 is **GRANTED IN PART** and **DENIED IN PART** as set forth more fully herein.

**IT IS FURTHER ORDERED** that the Motion to Compel Interrogatory Responses from Plaintiff (R. Doc. 40) filed by Cenlar FSB on April 12, 2019 is **GRANTED IN PART** and **DENIED IN PART** as set forth more fully herein.

Signed in Baton Rouge, Louisiana, on October 28, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**